**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **BAPTISTE CHISESI, JR.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 09-7022** |
| | * | |
| **STATE FARM MUTUAL AUTOMOBILE** | * | **SECTION "B"(2)** |
| **INSURANCE COMPANY** | * | |

<u>**ORDER AND REASONS**</u>

Before the Court are Intervenors, Edward P. Gothard, Philip R. Adams and the Law Firm of Nowalsky, Bronston & Gothard's Ex Parte Motion for Entry of Judgment (Rec. Doc. No. 91) and Plaintiff's Counsel Edward B. Mendy and the Law Firm of Mendy & Beekman PLLC's Motion for Leave to File Petition for Intervention (Rec. Doc. No. 92). After considering the motions, responses, and applicable law, and for the reasons pronounced below,

**IT IS ORDERED** that Mendy's Motion for Leave to File Petition for Intervention (Rec. Doc. No. 92) be and is hereby **DENIED AS UNTIMELY AND FUTILE.** Intervenors' request for additional attorneys' fees relative to their opposition to the Motion for Leave to File the Petition for Intervention (Rec. Doc. Nos. 92, 95) is **DENIED.**

**IT IS FURTHER ORDERED** that Intervenors' Ex Parte Motion for Entry of Judgment (Rec. Doc. No. 91) be and is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that Intervenors' Motion for Sanctions Pursuant to FRCP 11 (Rec. Doc. No. 57) be and is hereby **GRANTED.**

1

I. *Cause of Action and Procedural History of Case*

This case originated out of an automobile accident on August 19, 2008 in which Plaintiff was severely injured (Rec. Doc. No. 1-7). The action was removed to this Court on October 22, 2009. (Rec. Doc. No. 1). At the commencement of the suit, Plaintiff was represented by Robert Evans and the Law Firm of Burgos and Evans who were terminated by Plaintiff and have since been dismissed as Intervenors. (Rec. Doc. Nos. 18, 50). Intervenors Edward P. Gothard and Philip R. Adams of the firm Nowalsky, Bronston & Gothard were retained as Plaintiff's counsel after Evans' termination. *Id*. On June 8, 2010, Plaintiff filed a motion to substitute counsel, stating that Mr. Gothard and Mr. Adams no longer represented him and requesting his newly retained counsel Edward B. Mendy of the firm Mendy & Beekman, PLLC be appointed as Plaintiff's counsel; the Court granted this motion. (Rec. Doc. Nos. 19, 20). Messrs. Gothard and Adams sought leave to file a petition for intervention, which, in granting, Magistrate Judge Wilkinson stated "[a]t this pleading stage, the proposed intervenors have established that they possess an interest in this action and that final disposition of this action may impair or impede their ability to protect their interest."[1] (Rec. Doc. No. 28 at 2-3). Gothard and Adams seek attorneys' fees allegedly owed

---

[1]In their Petition for Intervention, Intervenors state that their attorney-client relationship with Plaintiff was terminated on May 28, 2010 upon being discharged by Plaintiff. (Rec. Doc. No. 29 at 2).

to them on a contingency fee contract for time and costs expended during their representation of Plaintiff from April 21, 2009 to May 27, 2010.  (Rec. Doc. No. 29 at 2).

On September 9, 2011, the Court entered a sixty day order of conditional dismissal, dismissing Defendant, State Farm as Plaintiff and Defendant had reached a settlement agreement.  (Rec. Doc. No. 38).  State Farm's Motion to Reopen was later dismissed as moot.  (Rec. Doc. No. 43).  The Court dismissed State Farm and another party in intervention in the same October 12, 2010 order allowing Plaintiff to pay Intervenors $5,183.28 for their expenses and ordering Plaintiff to deposit $108,333.33 representing the maximum fees claimed by Intervenors into the registry of the court. (Rec. Doc. No. 50).  The check submitted to the Court's registry was twice returned with the status of insufficient funds; the Court ordered Mr. Mendy to show cause in writing why he should not be sanctioned for such conduct.[2]  (Rec. Doc. No. 58).

Two days before the Court issued the Rule to Show Cause, Intervenors filed an opposed Motion for Sanctions pursuant to Fed. R. Civ. P. 11(c)(2) which is technically currently pending at Rec. Doc. No. 57.  The Court heard oral argument on the motion on October 18, 2011, deferred ruling on the motion, and instructed Mr.

---

[2] Two later Motions for Sanctions (Rec. Doc. Nos. 79, 82) filed by Intervenors Gothard and Adams were referred to and granted by Magistrate Judge Wilkinson as unopposed at Rec. Doc. Nos. 83 and 88 respectively. Gothard and Adams state that Mr. Mendy has not yet complied with either order.  (Rec. Doc. No. 95 at 4).

Mendy as described above.  Movants' Motion for Summary Judgment, discussed in greater detail *infra*, which the Court granted as unopposed sought "judgment on their Motion for Sanctions Pursuant to FRCP Rule 11 (Doc. 57) . . ." (Rec. Doc. No. 87 at 1).  Farther on in the same summary judgment motion, Movants referenced the pending sanctions motion and stated "[t]he entirety of that motion and all exhibits are adopted, as if copied herein *in extenso*." (Rec. Doc. No. 87-1 at 20).

Although that summary judgment motion was granted as unopposed, the motion for sanctions is technically still pending and, paragraph five of the proposed judgment accompanying Intervenors Gothard and Adams' Motion for Entry of Judgment proposes granting Rec. Doc. No. 57 with spaces for entry of amount of sanctions.  (Rec. Doc. No. 91-2 at 2).

After the Court heard oral argument on Intervenors' Motion for Emergency Status Conference and Motion for Sanctions, the Court "instruct[ed] Mr. Mendy to consult with his client in order to consider voluntary dismissal of the malpractice claims and resolution of the intervention." (Rec. Doc. No. 67).  To date, there has been no motion for voluntary dismissal of the malpractice claims; however, Respondents state in their opposition to the instant motion that Plaintiff has decided not to pursue those

claims.[3]

Before the scheduled February 24, 2011 final pretrial conference could be held, Intervenors filed a Motion for Summary Judgment (Rec. Doc. No. 87) set for hearing on February 2, 2011. Said motion sought legal fees in the amount of $130,000.00, judgment on the pending motion for sanctions (Rec. Doc. No. 57) discussed *supra*, dismissal of all counterclaims of malpractice by Mr. Mendy, and dismissal of all other claims pending in this action. (Rec. Doc. No. 87 at 1-2). As no opposition was filed within the time set by the Local Rules, the Court granted the Motion for Summary Judgment as unopposed on January 26, 2011. (Rec. Doc. No. 89). The order allowed a motion for reconsideration to be filed within thirty days of its entry, or by February 25, 2011. Neither a motion for reconsideration nor a motion for extension of time in which to file such a motion was filed before the instant Motion for Entry of Judgment was filed by intervenors on March 1, 2011. (Rec. Doc. No. 91). Mr. Mendy filed the instant Motion for Leave to Intervene on March 2, 2011. (Rec. Doc. No. 92).

To determine where and in what amounts the settlement funds

---

[3]Specifically, "[Mendy] suggests [sic] that [Plaintiff's] decision not to continue to prosecute his claims for malpractice, solely because he is under the misguided belief that the court's caution to him regarding sanctions is an opinion that the court does not believe that Plaintiff has a colorable malpractice claim, does not in any way affect the right of [Mendy] to claim fees due them as a result of representation of Plaintiffs [sic]." (Rec. Doc. No. 93 at 2).

were or had been disbursed, on April 8, 2011, parties' counsel were directed to submit "a summary itemizing the payments and financial history of the $325,000.00 for which Plaintiff settled his claims from the week of September 8, 2010 to date." (Rec. Doc. No. 106 at 1).  Counsel was ordered to specifically address

> disbursements made after this Court's October 12, 2010 Order allowing Plaintiff 'to pay the medical bills and expenses as mutually agreed with his attorneys, Intervenors Edward P. Gothard, Philip R. Adams, Jr., and the law firm of Nowalsky, Bronston & Gothard, A Professional Limited Liability Company and the service providers' and stating that 'Plaintiff and his attorneys Mendy & Beekman, PLLC shall be responsible for payment of outstanding medical bills and shall indemnify Intervenors . . . from any claims by any medical providers.'

*Id.* (quoting Rec. Doc. No. 50 at 2).  That same order stated that "[a]mounts paid from the original $325,000.00 shall be itemized along with a list of payees and corresponding copies of any and all medical bills, invoices etc. requesting payments." (Rec. Doc. No. 106 at 1-2).  The Court ordered counsel for the parties to submit this information to the court no later than noon on April 15, 2011.

Intervenors timely filed their response to the above mentioned order stating that they have never been contacted by Mr. Mendy regarding Plaintiff's outstanding medical bills nor have they received confirmation that any such bills have been paid. (Rec. Doc. No. 107 at 2).  Intervenors contend they have received no documentation from either Plaintiff or Mr. Mendy to show that any medical bills were paid "despite requesting this information in discovery." *Id.*  Finally, Intervenors point out that they

6

continued to receive medical bills for Plaintiff's outstanding expenses and requests for payment up to October 14, 2010. Intervenors allege their additional expenses since reimbursement total $9,712.35 and attach an itemized statement for those expenses at Rec. Doc. No. 107-1.

To date, Mr. Mendy has not submitted the information ordered in this Court's April 8, 2011 Order. However, three minutes before the deadline to submit that information, Mr. Mendy filed a Motion for Extension of Time to submit the ordered documentation. (Rec. Doc. No. 108). That motion requested an extension of three business days up to and including April 20, 2011 because "undersigned has been out of his office since April 15, 2011" to attend a hearing in this matter which was ultimately cancelled and "on a personal matter." *Id.* at 2. This Court denied the motion on April 18, 2011 at Rec. Doc. No. 110. Since that date, Mr. Mendy has not responded to the Court's Order nor the denial of his motion for extension of time. The order denying Mendy's requested extension is the last document filed in the record to date.[4]

---

[4]Mr. Mendy's Motion for Extension of Time states that "[t]here have been no previous requests for a continuance or extension of time in this matter." (Rec. Doc. No. 108 at 2). However there exist several instances in the record where Mr. Mendy has previously requested an extension of time or a continuance. (*see* Rec. Doc. No. 75, Mendy's "Motion to Continue Hearing and Extend Time within which to File a Response to Motion to Compel"; denied by Magistrate Judge Wilkinson at Rec. Doc. No. 76; *see also* Rec. Doc. No. 100, Mendy's "Motion to Have Motion for Entry of Judgment Heard without Oral Argument or in the Alterative to Continue Hearing, denied at 102).

II.  *Contentions of the Parties*

A. *Ex Parte Motion for Entry of Judgment*

1. *Contentions of Movants*

Movants Gothard, Adams, and the Law Firm of Nowalsky, Bronston & Gothard ("Gothard and Adams") seek entry of judgment regarding their Motion for Summary Judgment (Rec. Doc. No. 89) which was granted as unopposed by this Court's January 26, 2011 Order.  (Rec. Doc. No. 89).  Gothard and Adams note that the Court's Order required any motion for reconsideration be filed within thirty days of that order and that no such motion was filed during that period.

Gothard and Adams rebut respondents' contentions that they "surreptitiously seek to extinguish the claims for attorneys' fees and expenses" by pointing out that the underlying Motion for Summary Judgment was granted as unopposed and no motion for reconsideration was filed within the thirty day period. (Rec. Doc. No. 98 at 1).  Additionally they point out that, although Respondents state in their opposition that Plaintiff has decided not to prosecute the malpractice claim against Gothard and Adams, Mr. Mendy has not moved for dismissal of said claim nor did he inform movants of Plaintiff's decision until writing so in the opposition. *Id*. at 2.  Finally, Gothard and Adams state that they will not seek attorney's fees associated with the instant motion as

8

"this case needs to be over, and movers do not wish to cause any additional delay to the entry of final judgment." *Id.* at 3.

    2. *Contentions of Respondents*

    Respondents, Edward B. Mendy and the law firm of Mendy & Beekman, PLLC ("Mendy") contend they are entitled to legal fees pursuant to La. R.S. 37:218 and Fed. R. Civ. P. 24. Oddly, Mendy appears to write in opposition to the underlying Motion for Summary Judgement, which this Court granted as unopposed on January 26, 2011, referring to said motion as the "proposed summary judgment motion". (Rec. Doc. No. 93 at 5). As mentioned above, that motion requested among other things, $130,000.00 in legal fees; currently, there is $108,333.33 in the registry of the Court. (Rec. Doc. No. 87 at 1). At points, Mendy refers to the underlying motion as "the unopposed motion for summary judgment."[5] (Rec. Doc. No. 6). Later in the opposition, Mendy states that "every fact precludes summary judgment on the issue of whether or not the claim for [Respondents] should be precluded." *Id.* at 9.

    Mendy argues that under Louisiana law and jurisprudence, an attorney may advance a client funds for certain, limited purposes and that, as Mendy's Motion for Leave to File Intervention claims

─────────────

[5]It appears that Mr. Mendy took no notice of the underlying summary judgment motion until the instant motion was filed. In a March 1, 2011 email from Mr. Mendy to Gothard and Adams' counsel Mr. Mentz, attached as an exhibit to Mr. Mendy's motion for leave to intervene, Mr. Mendy states "in light of the proposed judgment filed by Mr. Gothard, I intend to file a petition for intervention tomorrow." (Rec. Doc. No. 92-2).

9

such costs, Gothard "cannot in good faith expect judgment against [Mendy] in a matter [that Mendy is] not part[y] to and ha[s] not been impleaded."[6] (Rec. Doc. No. 93 at 11). Again, Mendy appears to be under the mistaken impression that the underlying Motion for Summary Judgment has yet to be granted and further suggests that Gothard's filing of the instant *Ex Parte* motion for entry of judgment is in bad faith. In furtherance of the argument of entitlement to attorneys' fees and expenses, Mendy quotes from the statement of uncontested facts in the underlying Motion for Summary Judgment. (Rec. Doc. No. 93 at 7). Amazingly, Mendy cites, among others, the following uncontested facts and states that "these facts . . . establish beyond dispute that [Mendy] provided significant services to Plaintiff in this matter and that [Mendy is] entitled to a portion of the fees deposited with the court":

> 11. During Mendy's representation of Chisesi, he filed no substantive pleadings, took no depositions, produced no expert reports, hired no experts, did not supplement the pleadings or discovery responses prepared by movers, and did not supplement the proof of claim previously submitted to State Farm by movers.

> 13. Mendy did propound discovery including in excess of 100 interrogatory questions without requesting leave of court to exceed the allowable number of questions.

> 14. Mendy has stated on several occasions that the purpose of this vexatious litigation was to significantly increase State Farm's defense costs.

---

[6]Mendy does not address how he "[is] not [a] part[y]" to a suit in which he is enrolled as Plaintiff's counsel.

18. Following this hearing, this Court deferred ruling, but rather instructed Mendy to consult with his client in order to consider voluntary dismissal of the malpractice claims and resolution of the intervention. The claims have not been dismissed.

(Rec. Doc. Nos. 87-2 at 2-4; 93 at 7).

Finally Mendy contends the instant Motion for Entry of Judgment should have been set for hearing and quotes portions of the Local Rules addressing Noticing Motions for Submission. (Rec. Doc. No. 93 at 12). However, these contentions are once again clouded by misunderstanding. Mendy states that "No[t] only is the instant motion a consent motion, movers did not even attempt to see[k] consent of Plaintiff or [Mendy]." *Id*. The Court can only assume that Mr. Mendy has misunderstood the entry on the docket sheet reading "EXPARTE/CONSENT MOTION Entry of Judgment" rather than reading the text of the instant motion or its title "Ex Parte Motion for Entry of Judgment".

B. *Motion for Leave to Intervene*

1. *Contentions of Movants*

Movants, Edward B. Mendy and his firm ("Mendy")'s motion is in large part and quite noticeably, a copy of his motion in opposition (Rec. Doc. No. 22) to Respondents' Motion for Leave to File a Petition for Intervention at Rec. Doc. No. 21 filed on July 22, 2010. Mendy seeks leave to file a petition for intervention of right pursuant to Fed. R. Civ. P. 24 and in accordance with La.

11

Rev. Stat. Ann. § 37:218. (Rec. Doc. No. 92-1 at 2). Mendy also seeks sanctions against Gothard and Adams "for their refusal to consent to the filing" of the instant motion, or alternatively, the cost of the instant motion.[7] *Id*. at 10.

Without addressing the issue of the timeliness of the motion, Mendy, borrowing verbatim from Rec. Doc. No. 22, states that "Louisiana courts have consistently recognized the right of the discharged attorney to enforce his claim for fees through intervention in the suit in which the attorney provided service . . . . Also recognized has been the right of a discharged attorney to enforce his properly perfected claim for a contracted fee under La. R.S. 37:218 not only against his former client, but also against the opposing party in the suit filed by his former client." (Rec. Doc. No. 92-1 at 5-6). Mendy does not allege or show that Mendy has been discharged. Mendy claims there exists a valid contingency fee agreement with Plaintiff and that Mendy is thereby entitled to recover legal fees and expenses. However, Mendy fails to attach a copy of any such agreement.[8]

Citing Louisiana law and jurisprudence, Mendy argues that

---

[7]As is further explained *infra*, Movants' argument for sanctions in their March 2, 2011 motion is based on the language of the Local Rules of this Court before the most recent amendments thereto became effective February 1, 2011.

[8]Gothard and Adams correctly point out in their opposition that the only copy of a contingency fee agreement from Mendy, at Rec. Doc. No. 79-3, is unsigned bearing neither Plaintiff's nor Mendy's signature. (Rec. Doc. No. 95 at 3).

although the pertinent statute and Rule 1.8(e) of the Louisiana Rules of Professional Conduct state that "a lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation" except in the two circumstances therein discussed, a line of Louisiana jurisprudence allows such advances in certain instances. (Rec. Doc. No. 92-1 at 6-8) (citing *Chittenden v. State Farm Mutual Auto. Ins. Co.*, 00-0414 (La.5/15/01); 788 So.2d 1140, 1146; *Louisiana State Bar Ass'n v. Edwins*, 329 So. 2d 437 (La. 1976)). Mendy contends that "the expenses and advances made by [Mendy] were within the constraints set forth by law." (Rec. Doc. No. 92-1 at 8). At no point does Mendy address the timeliness of the motion for leave to intervene.

Finally, Mendy seeks sanctions against Gothard and Adams for their failure to consent to the filing of their motion. However, Mendy cites the entirety of old Local Rule 7.6E which, although similar to the current and shorter Local Rule 7.6, contains a portion no longer in the applicable rule.[9] However, since the amended Local Rules became effective February 1, 2011, sanctions are no longer available under the applicable Local Rule. Mendy's failure to realize the change in Local Rules over a month before

---

[9]Former Local Rule 7.6E contained a sentence which stated that "[i]f the court finds that opposing counsel does not have a good faith reason for failing to so consent, the court may impose such sanctions as it deems proper."

the filing of the instant motion for leave to intervene leaves Mendy requesting unavailable relief.  In any event, we would not exercise our discretionary authority to award sanctions to an attorney who fails to comply with or misinterprets Court rules and orders.

      2. *Contentions of Respondents*

      Gothard and Adams' vehement contentions are best summarized, by the sentence in the conclusion stating "Mendy's Motion is a wholly inappropriate and legally flawed pleading, which is a back door approach to re-litigate those issues already ruled upon by summary judgment, and filed outside of the 30 day time frame within which the Court afforded for reconsideration of the summary judgment." (Rec. Doc. No. 95 at 10).  Gothard and Adams list the factors requisite to being granted leave to intervene and, although their primary contention is that the instant motion is untimely, they submit that Mr. Mendy fails to satisfy any of the four. *Id.* at 1-2.  Gothard and Adams conclude by requesting the Court award them attorneys' fees for having to oppose the instant motion. *Id.* at 11.

<u>Law and Analysis</u>

A.   <u>Motion for Entry of Judgment</u>

      As the Motion for Summary Judgment underlying the instant motion was granted as unopposed on January 26, 2011, no motion for

14

reconsideration was filed within the allowed thirty day period, and because, in the face of the rules of procedure, it appears Mr. Mendy and his firm attempt to oppose the underlying motion thirty five (35) days after this Court granted it as unopposed and five (5) days after passage of the last date by which to file a motion for reconsideration of that order, Gothard and Adams' Motion for Entry of Judgment (Rec. Doc. No. 91) is **GRANTED**.

B.   <u>Motion for Leave to File Petition for Intervention</u>

Federal Rule of Civil Procedure 24 states, in pertinent part:

> *On timely motion*, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2) (emphasis supplied). "Federal courts should allow intervention where 'no one would be hurt and greater justice could be attained.'" *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

Therefore, a party is entitled to an intervention of right if (1) the motion to intervene is timely; (2) the potential intervenor asserts a "direct, substantial [and] legally protectable" interest that is related to the property or transaction that forms the basis of the controversy in the case into which it seeks to intervene;

15

(3) the disposition of that case may impair or impede the potential intervenor's ability to protect its interest; and (4) the existing parties do not adequately represent the potential intervenor's interest. *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247, 250 (5th Cir. 2009) (quotation omitted); *Ross*, 426 F.3d at 753; *Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 422 (5th Cir. 2002); *Ford v. City of Huntsville*, 242 F.3d 235, 239 (5th Cir. 2001); *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996); *Sierra Club v. Espy*, 18 F.3d 1202, 1204-05, 1207 (5th Cir. 1994) (quoting *Piambino v. Bailey*, 610 F.3d 1306, 1321 (5th Cir. 1980)). "Failure to meet any one of these requirements is fatal to a claim of intervention as of right." *U.S. Commodity Futures Trading Com'n v. PrivateFX Global One*, No. 09-1540, 2011 WL 888051, at *8 (S.D. Tex. March 11, 2011) (quoting *Taylor Commc'ns Grp., Inc. v. Sw. Bell Tel. Co.*, 172 F.3d 385, 386 (5th Cir. 1999).

Both permissive interventions and interventions of right may be permitted only "upon *timely* application," Fed. R. Civ. P. 24(a) (emphasis supplied), because "the requirement of timeliness applies whether intervention is sought as a matter of right or as a matter of discretion." 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1916 at 527-28 (3d ed.2007). The concept of "timeliness" in connection with motions for leave to intervene is a flexible one, which is left to the

16

sound discretion of the trial court.  *Id*. at 529 (citing *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989); *Holland v. Sterling Enters., Inc.*, 777 F.2d 1288, 1293 (7th Cir. 1985); *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)); accord *In re Lease Oil Antitrust Litig.*, 570 F.3d at 248.  "'The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner.'"  *Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 422 (5th Cir.2002) (quoting *Espy*, 18 F.3d at 1205).  "Th[is] analysis is contextual; absolute measures of timeliness should be ignored."  *Espy*, 18 F.3d at 1205; accord *Heaton*, 297 F.3d at 422.  "A court should ignore 'how far the litigation has progressed when intervention is sought[,] . . . the amount of time that may have elapsed since the institution of the action . . . [, and] the likelihood that intervention may interfere with the orderly judicial processes.'"  *American V Ships Ltd. v. Norica Eng'g Servs.*, 34 Fed. Appx. 151, 2002 WL 496377, at *3 (5th Cir. 2002) (quoting *John Doe # 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001)).

When determining whether a motion to intervene is timely, a court must consider the following four factors: (1) how long the potential intervenor knew or reasonably should have known of his stake in the case into which he seeks to intervene; (2) the

17

prejudice, if any, the existing parties may suffer because the potential intervenor failed to intervene when he knew or reasonably should have known of his stake in that case; (3) the prejudice, if any, the potential intervenor may suffer if the court does not let him intervene; and (4) any unusual circumstances that weigh in favor of or against a finding of timeliness. *In re Lease Oil Antitrust Litig.*, 570 F.3d at 247-48 (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263-66 (5th Cir. 1977)); *Effjohn Int'l Cruise Holdings*, 346 F.3d at 560-61 (citing *Glickman*, 256 F.3d at 375-76). "These factors are 'not a formula for determining timeliness;' instead, it should be determined based on all the circumstances." *Id.* at 561 (quoting *Glickman*, 256 F.3d at 376). The Court will address the four timeliness factors listed *supra* in determining whether the instant motion is timely:

(1) *Length of actual/constructive knowledge of stake in case*

Here, it seems reasonable to conclude that Mr. Mendy was aware of a stake in the litigation when he began to represent Plaintiff in May 2010[10]; and if not then, when the Court granted the motion to substitute him as Plaintiff's counsel on June 10, 2010. (Rec. Doc. No. 20). At that point, Burgos & Evans had already been

_____

[10]Although the record is unclear as to the exact date on which Mendy began to represent Plaintiff, a May 24, 2010 email from Mendy to Gothard states that "[w]e have been retained by [Plaintiff] to take over the prosecution of his case . . . ." (Rec. Doc. No. 79-4).

granted leave to and had filed their intervenor complaint. (Rec. Doc. No. 18). Although it would seem unreasonable for this not to be the case, Mr. Mendy was almost certainly aware of such a stake when Mssrs. Gothard and Adams requested leave to file their petition for intervention on July 22, 2010. Thus, Mendy had actual or constructive knowledge of his stake in the litigation in May 2010 at the earliest and July 2010 at the latest. Regardless of the exact point in this window at which he gained said knowledge, an attempt to intervene, at a minimum, over seven months later, does not militate in favor of a finding of timeliness.

(2) *Potential Prejudice to Existing Parties*

The prejudice which Gothard and Adams may suffer due to Mr. Mendy's failure to intervene while possessed of actual or constructive knowledge of the existence of a stake in the case is potentially great. Gothard and Adams here timely filed pleadings, including witness and exhibit lists, as well as the underlying summary judgment motion which was granted as unopposed in an Order to which Mendy failed to file a motion for reconsideration. Mendy's attempted circumnavigation of his failure to timely file (a) an opposition to the summary judgment motion or (b) a motion for reconsideration of the order granting said motion cannot be allowed to take the form of a request for leave to intervene in order to relitigate issues already decided. This factor does not

19

weigh in favor of granting the instant motion.

(3) *Potential Prejudice to Potential Intervenor if not allowed to Intervene*

If Mendy is not allowed to intervene, the potential prejudice may include the loss of attorney's fees and costs for work performed in this litigation; however, this potential prejudice is almost, if not entirely of his own making for reasons discussed in depth *supra*. The potential prejudice to Mendy is clearly less than the same for Gothard and Adams.

(4) *Unusual circumstances that weigh in favor of or against a finding of timeliness*

An unusual circumstance surrounds the instant motion; Mr. Mendy is still listed as counsel of record for the Plaintiff. Requesting leave to intervene in order to collect attorneys' fees in a case in which one is still enrolled as Plaintiff's counsel is certainly unusual. In fact, the instant motion's procedural history is, in itself, unusual. This factor speaks against a finding of timeliness.

Weighing these factors in this case militates heavily in favor of a finding that the motion is untimely and futile. As such, because "[f]ailure to meet any one of [the] requirements is fatal to a claim of intervention as of right" *Taylor Commc'ns Grp.*, 172 F.3d at 386, the Court need not address whether the motion

satisfies the remaining three requisites to allow intervention.

Further, given the record evidence adverse to Mendy's handling of the underlying action, including instances of noncompliance with Court rules and Orders, the act of granting Mendy's intervention request would be a futile gesture.

New Orleans, Louisiana, this 18TH day of July, 2011.

_____
UNITED STATES DISTRICT JUDGE